IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

HERBERT E. ADCOCK, and
LEAH FETTER,

        Plaintiffs,

v.                                                            No. 06-2109

CITY OF MEMPHIS, JAMES FETTER
in his official and individual capacities,
ADAM GAGNIER, in his official and
individual capacities, ROBERT BLAKE
PEEBLES, and JOHN DOES 1-10,
in their official and individual capacities,

        Defendants.

_____

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS
_____

The Plaintiffs, Herbert E. Adcock and Leah Fetter, have sued the Defendants, City of

Memphis, James Fetter, Adam Gagnier, Robert Blake Peebles, and John Does 1-10, pursuant to 42

U.S.C. § 1983, alleging that they conspired to, and did in fact, violate the Plaintiffs' Fourth and

Fourteenth Amendment rights.  The Plaintiffs also brought claims under state law and for punitive

damages.  Before the Court is the motion to dismiss of Defendants City of Memphis, Fetter, Gagnier,

and Peebles pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Plaintiffs have

responded and this motion is now appropriate for disposition.  For the reasons set forth below, the

motion to dismiss is GRANTED in part and DENIED in part.

BACKGROUND

1

The Plaintiffs have alleged the following in their complaint.  Defendant James Fetter was the husband of Plaintiff Leah Fetter during the course of events giving rise to the complaint.  (Compl. ¶ 5).  In early 2005, Leah Fetter and James Fetter had an argument, resulting in James Fetter firing his weapon into the ceiling of their home.  (Compl. ¶ 14).  Following the shooting, Adcock, a friend of Leah Fetter,  helped her leave the City of Memphis.  (Compl. ¶¶ 12, 15).  James Fetter thereafter told Adcock that he "would get even with him because he helped get [his wife] out of town and away from [him]."  (Compl. ¶ 16).  Adcock recorded James Fetter threatening to "destroy" him. (Compl. ¶ 17).

Also in early 2005, Defendants Fetter and Gagnier went to the Park Palace apartment complex, where Leah Fetter and Adcock lived as neighbors, and threatened and intimidated the Plaintiffs.  (Compl. ¶ 18).  During the altercation, someone called 9-1-1, resulting in a Memphis Police Department ("MPD") lieutenant arriving at the scene.  (Compl. ¶ 19).  The Plaintiffs told the lieutenant about the actions of James Fetter and Gagnier.  (Id.).  The MPD, however, failed to supervise the activities of these Defendants or to protect the Plaintiffs based upon the information provided by Leah Fetter and Adcock.  (Compl. ¶¶ 20-21).

James Fetter next told members of the MPD that the Plaintiffs were in possession of illegal narcotics.  (Compl. ¶ 24).  Based on this tip, members of the MPD stopped Adcock and Leah Fetter as they were traveling in Adcock's car.  (Compl. ¶¶ 25-26).  During the traffic stop, an officer allegedly stated to Adcock, "you have crossed the line[;] you're in a relationship with a police officer's wife and we stick together."  (Compl. ¶ 26).

The Plaintiffs went to the Internal Affairs Squad of the MPD and reported the threats, intimidation, and harassment, presenting evidence of their allegations in the form of tape-recorded

statements and e-mail printouts.  (Compl. ¶¶ 28-29).  The tape recordings and e-mails confirmed the Plaintiffs' contention that James Fetter intended to plant illegal narcotics on Adcock.  (Compl. ¶ 29).  Instead of taking actions to prevent the illegal activities of Defendants Fetter and Gagnier, Internal Affairs told Adcock that the Fetters were in the middle of a divorce and that he should "stay out of it," and "watch his back."  (Compl. ¶ 30).

In April of 2005, Gagnier planted illegal narcotics, which were given to him by James Fetter, in Adcock's car.  (Compl. ¶ 33).  Defendants Fetter and Gagnier then conspired with other members of the MPD to stop and search Adcock's car, resulting in both Plaintiffs being arrested and charged with possession with intent to sell cocaine.  (Compl. ¶ 38).  Thereafter, James Fetter and Gagnier approached a Shelby County, Tennessee Assistant District Attorney and urged him to prosecute the Plaintiffs to the fullest extent of the law.  (Compl. ¶ 39).

The Plaintiffs allege that the MPD has a history and custom of planting illegal narcotics and fabricating evidence.  (Compl. ¶¶ 40-43).

Regarding Defendant Peebles, the Plaintiffs contend this Defendant conspired with Defendants Fetter and Gagnier in an attempt to have Adcock removed from his position as president and CEO of American Merchant Data Services ("AMDS"), a publicly traded Mississippi company.  (Compl. ¶¶ 44-46).  In furtherance of their conspiracy, Peebles obtained bank information, while acting under color of state law, related to Adcock's "operation and management of AMDS . . . ."  (Compl. ¶ 48).

<u>STANDARD OF REVIEW</u>

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  The Rule requires the Court to "construe the

complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957). However, "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

ANALYSIS

Fetter, Gagnier, and Peebles contend that the Plaintiffs' claims against them in their official capacities should be dismissed because such a claim is in essence the same as one against the municipality. The officers also argue that the Plaintiffs "do not have a cause of action for conspiracy under the civil rights statutes." (Defs.' Memorandum of Law in Supp. Mot. to Dismiss at 2) ("Mot. to Dismiss"). Additionally, the Defendants claim the complaint fails to state a cause of action under the Fourteenth Amendment and urge this Court to decline jurisdiction of the Plaintiffs' claims under the Tennessee Governmental Tort Liability Act ("TGTLA"). See Tenn. Code Ann. § 29-20-101 et seq. Finally, the City of Memphis insists that the Plaintiffs are not entitled to punitive damages against it.

I.      Federal Claims.

A.      Section 1983 Generally.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights,

privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a section 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock, 330 F.3d at 902. "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001). "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986).

      B.    Official Capacity.

Fetter, Gagnier, and Peebles contend that the Plaintiffs' claims against them under section 1983 in their official capacity are subsumed by the allegations against the City of Memphis. The Plaintiffs agree in response that dismissal of these official capacity claims is appropriate under current law but oppose dismissal "to preserve their legal rights should the case law change." (Pls.' Resp. in Opposition to Defs.' Mot. to Dismiss at 6).

Suits against public officers in their official capacity "are an alternative way of pleading an action against the entity for which the officers are employed." Dudley v. Eden, 49 F. Supp. 2d 581, 589 n.5 (N.D. Ohio 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099 (1985)). Therefore, the Plaintiffs' action against these Defendants in their official capacities are included within their claims against the City of Memphis. Id. Based on the current state of the law on this issue, the official capacity claims against the individual Defendants are DISMISSED.

      C.    Failure to State a Claim-Rule 12(b)(6).

5

1.      Conspiracy

The Defendants assert that the Plaintiffs have failed to state a cause of action for conspiracy. They maintain that section 1983 does not encompass conspiracy claims and that although 42 U.S.C. § 1985 does address conspiracy, it requires the conspiracy to have been motivated by "racial, or other class-based, invidiously discriminatory animus." (Mot. to Dismiss at 2). The Defendants argue that the Plaintiffs have failed to allege that they acted with a race-based intent. The Defendants also maintain that the "intracorporate conspiracy" doctrine negates this claim because the City of Memphis cannot conspire with its own employees or agents.

Initially, the Court notes the Plaintiffs' complaint does not include a cause of action pursuant to 42 U.S.C. § 1985. Rather, counts I, III, and IX of the complaint allege a conspiracy among the Defendants to violate only section 1983. As such, the Court will not address the Defendants' argument concerning any claims under section 1985.

As for the section 1983 conspiracy allegations, the United States Supreme Court in Dennis v. Sparks addressed such a claim. 449 U.S. 24, 101 S. Ct. 183 (1980). The plaintiff in Dennis filed an action in federal court arising out of an "injunction [that] had been corruptly issued as the result of a conspiracy between the [state] judge and the other defendants, thus causing a deprivation of property, i. e., two years of oil production, without due process of law." Id. at 26, 101 S. Ct. at 185. Although concluding that the judge was immune from suit as a state official under the Eleventh Amendment, the Court found that a cause of action had been stated against the other co-conspirators, holding that

> [u]nder these allegations, the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages liability. Immunity does not change the character of the judge's action or that

6

> of his co-conspirators.  Indeed, his immunity is dependent on the
> challenged conduct being an official judicial act within his statutory
> jurisdiction, broadly construed.   Private parties who corruptly
> conspire with a judge in connection with such conduct are thus acting
> under color of state law within the meaning of § 1983 as it has been
> construed in our prior cases.

Id. at 28-29, 101 S. Ct. 186-87 (internal citations and footnote omitted).

The Sixth Circuit, citing Dennis, has also recognized the validity of a section 1983 conspiracy claim.  See Macko v. Bryan, 641 F.2d 447, 449-50 (6th Cir. 1981); see also Hooks v. Hooks, 771 F.2d 935, 943-44 (6th Cir. 1985) (setting a standard for proving a section 1983 conspiracy); cf. Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003) (recognizing the propriety of but dismissing the plaintiffs' section 1983 conspiracy claim because "there [was] no evidence from which to infer that the defendants acted in concert") (emphasis added).  Therefore, to the extent the Defendants assert that no cause of action for conspiracy exists under section 1983, the Court finds that current law is to the contrary.

Even if a conspiracy claim exists under section 1983, the Defendants further aver that the "Intracorporate Conspiracy Doctrine[,] providing that a corporation cannot conspire with its own employees or agents as a matter of law, applies to actions for conspiracy to deny federal civil rights." (Mot. to Dismiss at 2).  As such, the doctrine would disallow the Plaintiffs' conspiracy claims against the Defendant City.  The intracorporate conspiracy doctrine originates principally from antitrust law.  See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S. Ct. 2731 (1984).  However, the Sixth Circuit has recognized that the doctrine applies to federal civil rights actions.  See, e.g., Johnson v. Hills & Dales General Hosp., 40 F.3d 837, 839 (6th Cir. 1994) (stating

7

that "in cases brought under section 1985(3)[1], a corporation cannot conspire with its own agents or employees"); Doherty v. Am. Motors Corp., 728 F.2d 334, 339-40 (6th Cir. 1984).

Courts have recognized a "scope of employment" exception to the intracorporate conspiracy doctrine, however, which draws "a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." Johnson, 40 F.3d at 840. Under this exception, an "'intracorporate conspiracy may be established where individual defendants are also named and those defendants act outside the scope of their employment for personal reasons.'" Id. (quoting Garza v. City of Omaha, 814 F.2d 553, 556 (8th Cir. 1987)).

In this case, to the extent the motion to dismiss based on the intracorporate conspiracy doctrine seeks to eliminate the actions of the individual defendants, it is not well taken. See id. The Court finds the Plaintiffs' allegations place the individual Defendants' acts outside of their scope of employment with the MPD. However, insofar as the motion applies to the municipal Defendant, it is appropriately raised. The City of Memphis is a corporation within the meaning of the doctrine as acknowledged by Sixth Circuit precedent. See Johnson, 40 F.3d at 839-40. As such, it cannot conspire with its agents and employees. Thus, the motion to dismiss the conspiracy claims under section 1983 against the City of Memphis is GRANTED.

2.     Fourteenth Amendment

The Defendants contend that although the Plaintiffs' Fourteenth Amendment allegations

---

[1]The Court acknowledges that the Sixth Circuit's application of the intracorporate conspiracy doctrine in civil rights cases has been generally limited to conspiracy claims under 42 U.S.C. § 1985(3). However, the Court finds no distinction between sections 1985(3) and 1983 conspiracy claims that would prevent the use of the doctrine for such contentions under section 1983.

"may form the basis for a substantive due process claim under [that] Amendment," such claims must be brought under a more specific constitutional provision, such as the Fourth Amendment, for a claim alleging an unconstitutional search or seizure, as has been presented here.   Thus, the Defendants  submit any claims under the Fourteenth Amendment must be dismissed.

The Plaintiffs respond that their complaint does not contain a Fourteenth Amendment substantive due process claim.   They insist that they referenced the Fourteenth Amendment in their complaint because it makes the constitutional guarantees established in the First and Fourth Amendments applicable to the State of Tennessee.   They argue that their federal causes of action are only based upon violations of the First and Fourth Amendments.

The Court notes that the Plaintiffs' section 1983 claims assert deprivation of rights secured by either the First or Fourth Amendments (not both) before any reference is made to an alleged violation of the Fourteenth Amendment.   (Compl., Counts I, II, III, IV, IX, and X).   To the extent the complaint can be said to contain a section 1983 cause of action based on a stand-alone violation of the Fourteenth Amendment, the Defendants' motion to dismiss is GRANTED.   See Graham v. Connor, 490 U.S. 386, 109 S. Ct. 1865 (1989) (stating that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" section 1983 claims).

II.   Tennessee Governmental Tort Liability Act Claim

The Plaintiffs' causes of action for negligent hiring, retention, supervision, and training; false imprisonment; false arrest; and negligent infliction of emotional distress under Tennessee law are governed by the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. §

29-20-201 et seq.  The section 1983 claims would ordinarily confer supplemental jurisdiction over the TGTLA claims because they arise out of the same facts and form part of the same case or controversy.  See 28 U.S.C. § 1367(a).  However, TGTLA claims must be brought in "strict compliance" with the terms of the statute.  Tenn. Code Ann. § 29-20-201(c).  The TGTLA gives the state circuit courts exclusive original jurisdiction over claims brought pursuant to its provisions. Tenn. Code Ann. § 29-20-307.

A federal district court may, in its discretion, decline supplemental jurisdiction over a state law claim, even if jurisdiction would otherwise be proper under 28 U.S.C. § 1367(a). Section 1367(c)(4) allows a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

In Gregory v. Shelby County, Tennessee, the Sixth Circuit affirmed the district court's dismissal of the TGTLA claims, stating, "[i]n this instance, the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction."  220 F.3d 433, 446 (6th Cir. 2000); see also Maxwell v. Conn, No. 89-5060, 1990 WL 2774 (6th Cir. Jan. 18, 1990) (stating that the TGTLA's grant of exclusive jurisdiction to the state courts "belie[d]" plaintiff's argument that he could expect to try the TGTLA claims in the same proceeding as his federal claims); Spurlock v. Whitley, 971 F. Supp. 1166, 1185 (M.D. Tenn. 1997).

Furthermore, in Beddingfield v. City of Pulaski, 666 F. Supp. 1064 (M.D. Tenn. 1987), rev'd on other grounds, 861 F.2d 968 (6th Cir. 1988), the court held that the TGTLA's exclusive grant of jurisdiction to the state circuit courts precluded the federal court's exercise of supplemental

jurisdiction over TGTLA claims.  The court reasoned that, when such supplemental state law claims involve neither federal law nor federal diversity jurisdiction, no Supremacy Clause interests are implicated.  Therefore, federal courts would appear obligated to apply the TGTLA limitations on suability as a matter of state substantive law.  See Fromuth v. Metro. Gov't of Nashville, 158 F. Supp. 2d 787, 798 (M.D. Tenn. 2001).  The Court declines to accept jurisdiction over the Plaintiffs' claims brought pursuant to the TGTLA in accordance with 28 U.S.C. § 1367(c)(4).

III.    Punitive Damages

The City of Memphis further avers that the Plaintiffs' punitive damages claim against it must be dismissed.  It has been generally held that section 1983 plaintiffs cannot recover punitive damages against a municipality.  See Jefferson v. City of Tarrant, Ala., 522 U.S. 75, 79, 118 S. Ct. 481, 485 (1997) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748 (1981)); Chonich v. Wayne County Cmty. Coll., 973 F.2d 1271, 1274 n.3 (6th Cir. 1992), cert. denied, 512 U.S. 1236, 114 S. Ct. 2740 (1994).  Therefore, the Plaintiffs' claims for punitive damages are DISMISSED against this Defendant.

CONCLUSION

Based on the foregoing reasons, the Defendants' motion to dismiss is GRANTED as to the official capacity claims against Fetter, Gagnier, and Peebles; the conspiracy claims under section 1983 against the City of Memphis; the Plaintiffs' claims, if any, under the Fourteenth Amendment; the Plaintiffs' claims under the Tennessee Governmental Tort Liability Act; and the claim for punitive damages against the City of Memphis.  The Defendants' motion to dismiss is DENIED as to the section 1983 conspiracy claims against the individual Defendants.

**IT IS SO ORDERED** this 13th day of March, 2007.

s/  J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE