IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| **HERBERT ADCOCK and** | ) | |
| **LEAH FETTER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-2109-STA |
| | ) | |
| **CITY OF MEMPHIS,** | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING PLAINTIFFS' MOTION FOR NEW TRIAL**

Before the Court is Plaintiffs Herbert Adcock and Leah Fetter's Motion for New Trial (D.E. # 148,149) filed on February 26, 2011.[1] Defendant City of Memphis has filed a response in opposition to Plaintiffs' Motion. For the reasons set forth below, the Motion is **DENIED**.

## BACKGROUND

On February 17, 2006, Plaintiffs filed suit, alleging that Memphis Police Officers James Fetter and Adam Gagnier violated their civil rights by conspiring to plant illegal narcotics in Plaintiff Adcock's vehicle and falsely arrest both Plaintiffs. Defendant Fetter, the estranged spouse of Plaintiff Fetter, was indicted for his role in the false arrest of his wife and her friend Plaintiff Adcock. Defendant Fetter ultimately pled guilty to those charges. Defendant Gagnier was indicted for multiple unrelated acts of depriving citizens of their civil rights and pled guilty

---

[1] Plaintiffs filed an Amended Memorandum in Support (D.E. # 150) on February 28, 2011.

1

to some, but not all, of those charges.[2]  In this civil action, Plaintiffs sued Defendants Fetter and Gagnier in their official and individual capacities as Memphis Police Officers.  Prior to trial, the Court granted Plaintiffs default judgment on the issue of liability against Defendants Fetter and Gagnier for their failure to appear or otherwise defend (D.E. # 138).

Plaintiffs' Complaint further alleged that Defendant City of Memphis was liable pursuant to 42 U.S.C. § 1983 for violations of their civil rights by Memphis Police Officers.  Trial commenced on Plaintiffs' municipal liability claims on January 25, 2011.  After a five-day trial, a jury returned a verdict in favor of the City on January 31, 2011.  The Court entered its Judgment on February 2, 2011.

In the Motion before the Court, Plaintiffs argue that the Court should grant a new trial, largely because the jury verdict was against the weight of the evidence.  According to Plaintiffs, the proof at trial showed that a policy or custom of Defendant City of Memphis was the moving force behind the deprivation of their constitutional rights.  Plaintiffs maintain that they proved the City's policy or custom under three separate theories: (1) the City's inadequate early intervention program ("EIP"); (2) the City's inadequate procedures for taking and investigating citizen complaints against police officers and (3) the City's inadequate training. [3]  The Court notes that aside from a passing reference to *Monell*, Plaintiffs have not cited any legal authority on the elements and showings required to prove a § 1983 claim against a municipality.

---

[2] At trial the parties stipulated to all of these facts relating to the criminal prosecution of Defendants Fetter and Gagnier.

[3] Plaintiffs' Motion mentions, and the Court instructed the jury on, the inadequate training  theory.  Other than a reference to the Court's instruction on this theory, Plaintiffs's Memorandum does not brief any evidence on the City's inadequate training.  Therefore, the Court does not consider it here.

With respect to the City's EIP, Plaintiffs argue that the proof showed the EIP was deficient and inadequate. The jury heard testimony from Dr. Betty Winters ("Dr Winters"), the director of the EIP during the relevant time period. Dr. Winters stated that the program monitored officers for two types of violations of MPD policy, namely personal conduct and the use of excessive force. Any officer charged with two or more such violations within an eighteen (18) month period would be discussed by command staff and subject to further monitoring. There was no evidence that command staff ever notified officers that the EIP was monitoring them. Plaintiffs contend that the EIP was inadequate to identify problem officers. Dr. Geoff Alpert, Plaintiffs' expert on early intervention or warnings systems for police departments, opined that the City's EIP was not well-defined, that the criteria for monitoring officers were deficient, and that the City's EIP would fail to deter officers from engaging in misconduct.

Plaintiffs' second theory of liability in this case was that the City's lax investigative process at the Inspectional Services Bureau ("ISB") was the moving force behind the violation of Plaintiffs' civil rights. Plaintiffs argue that the MPD relied on citizen complaints about officer misconduct and yet failed to investigate complaints in an objective manner. Plaintiffs adduced proof of the number of complaints they made about the conduct of Defendants Fetter and Gagnier in the months leading up to the false arrest in May 2005. After observing Defendants Fetter and Gagnier on the premises of Plaintiffs' apartment complex without cause,[4] Plaintiffs called 911 and the officers' precinct about their activities. No action was taken to discipline

---

[4] The proof at trial showed that Plaintiff Fetter had moved out of the marital home at this time and was living in the same apartment complex as Plaintiff Adcock. Plaintiff Adcock owned his own company and employed Plaintiff Fetter as his secretary. Plaintiffs further admitted that they became romantically involved during this time period.

3

either officer. In February 2005, Plaintiff Fetter came to ISB to report that during an argument Defendant Fetter had fired his service weapon into the ceiling of their home while their children were upstairs. Plaintiff Fetter was informed that MPD did not get involved in domestic matters. Then on March 8, 2005, Plaintiffs were pulled over in what they refer to as a "bogus traffic stop" and questioned about possession of narcotics. Plaintiffs believed that Defendant Fetter was responsible for orchestrating the stop. On the following day, both Plaintiffs went to ISB to make a complaint. Officer Madean Thomas, the ISB officer who received the complaint, presented it to her supervisor and was instructed to dismiss the complaint because ISB did not get involved in officers' domestic affairs.[5] As a result, the complaint was closed twenty-three minutes after it was made, and no investigation occurred.

Dr. Jeff Noble, Plaintiff's expert on police internal affairs investigations, opined that the City's ISB procedures and handling of Plaintiff Fetter's complaint was inadequate. Additionally, Plaintiffs argue that there was proof that ISB had a backlog of complaints. The jury heard the testimony of Glenn Williams, an officer who took over as supervisor of ISB, stating that there were as many as 200 open ISB investigations when he first arrived. Plaintiffs elicited the testimony of Colonel Bishop Mays, the City's representative at trial, that the written procedures for ISB investigations were only guidelines. Colonel Mays stated that domestic violence situations were very serious and should be investigated. Colonel Mays could not explain why Plaintiff Fetter's ISB complaint was not investigated or why Defendants Fetter and Gagnier remained on active duty until their resignations from MPD. Based on the evidence reviewed in

---

[5] There was also testimony that Defendant Fetter had notified his supervisor that his wife intended to make a false ISB complaint against him.

their Motion, Plaintiffs argue that the jury's verdict was against the weight of that evidence.

As independent grounds for granting a new trial, Plaintiffs assert that the Court erred in an evidentiary ruling that substantially prejudiced Plaintiffs. During his opening argument, counsel for the City claimed that Plaintiffs could not produce evidence of another incident of an MPD officer planting narcotics. Plaintiffs objected and argued to the Court (and repeat their argument in their Motion) that a complaint about planting narcotics was made against Defendant Gagnier. Plaintiffs sought to introduce this evidence to the jury to rebut Defendant's challenge. The Court ruled that the incident was not admissible because it was undisputed that the allegation against Defendant Gagnier was never brought in a complaint to ISB. Rather, the citizen making the claim against Gagnier reported it to the FBI. The City never had notice of the allegation until it began investigating the May 2005 false arrest of Plaintiffs. In their Motion for New Trial, Plaintiffs argue that the Court's ruling was erroneous and prevented the Plaintiffs from introducing probative evidence that would have refuted the City's claim about prior incidents of planting drugs on innocent citizens.

In a related assignment of error, Plaintiffs argue that during opening and closing arguments, counsel for Defendant misrepresented to the jury the legal standard for Plaintiffs' § 1983 claims. According to Plaintiffs, Defendant posited to the jury that Plaintiffs had the burden to show a pattern or practice of planting drugs in order to prevail against the City. While admitting that they did not object at trial, Plaintiffs now contend that even if they had objected and the Court had sustained the objection, no instruction from the Court could have cured the error. Therefore, the Court should grant the new trial on the basis of the weight of the evidence, the erroneous evidentiary ruling during opening statements, and Defendant's misstatement of the

5

applicable law.

Defendant City of Memphis has filed a response in opposition to Plaintiffs' Motion. The City first disputes Plaintiffs' contention that the jury verdict was against the weight of the evidence. The City states that Plaintiffs' own expert Dr. Alpert admitted that most municipal police forces do not have early intervention systems. Dr. Alpert also admitted that the City's EIP was not a disciplinary tool for police officers but a system for identifying officers in need of counseling or remedial training. Dr. Alpert stated that even if the EIP identified an officer, the program might not necessarily prevent the officer from violating a citizen's civil rights in the future. The City's own expert Ken Katsaris ("Katsaris") testified that the City's focus on two criteria in its EIP, personal conduct and excessive force, was appropriate as those two factors are most significant in early intervention. Katsaris opined that the City's EIP was functional and adequate.

As for the ISB's handling of Plaintiffs' March 2005 complaint, the City argues that even if the jury credited Jeff Noble's opinion that the ISB investigation was inadequate, Plaintiffs failed to show a pattern or practice of inadequate investigation. Instead Plaintiffs focused their case only on the ISB's failure to investigate Plaintiffs' March 2005 complaint. According to the City, Katsaris as well as Colonel Mays testified that the ISB properly treated Plaintiffs' complaints as domestic matters. Likewise, there was no evidence that the backlog of complaints at ISB was the moving force in the violation of Plaintiffs' civil rights.

Finally, Defendant argues that the Court did not err in excluding the evidence of a prior complaint against Gagnier. The complaint was never addressed to the ISB. Furthermore, the City contends that a single complaint would not evidence "a widespread pattern or practice."

The City also denies that its argument to the jury was in any way improper. Therefore, the Court should deny the Motion for New Trial.

### **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 59(a) provides that a motion for new trial may be granted, in an action involving a trial by jury, "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."[6] The Sixth Circuit has construed Rule 59(a) to allow a district court to grant a motion for new trial only "when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias."[7]

A motion for new trial on the grounds that the verdict was against the weight of evidence requires the Court to compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence.[8] The motion should be denied and a new trial would be improper if a reasonable juror could have reached the same verdict.[9] "Courts are not free to reweigh the evidence and set aside the jury verdict merely

---

[6] Fed. R. Civ. P. 59(a).

[7] *Mitchell v. Boelcke*, 440 F.3d 300, 303 (6th Cir. 2006) (citing *Holmes v. City of Massillon, Ohio,* 78 F.3d 1041, 1045-46 (6th Cir. 1996)) (quotations omitted).

[8] *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 343 (6th Cir. 1993) (citing *Woodbridge v. Dahlberg,* 954 F.2d 1231, 1234 (6th Cir. 1992)).

[9] *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 821 (6th Cir. 2000) (citing *Holmes*, 78 F.3d at 1048). *See also Bruner v. Dunaway,* 684 F.2d 422, 425 (6th Cir. 1982) ("Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached.").

because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."[10]

## ANALYSIS

### I.     The Sufficiency of the Evidence

Plaintiffs' primary argument for a new trial is that the jury's verdict for the City was contrary to the weight of the evidence.  Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."[11]  In order to prevail on such a claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law."[12]  "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred."[13]  It was undisputed in this case that Memphis Police Officers deprived Plaintiffs of their constitutional rights.  The issue for the jury then was whether the City caused the deprivation.

In this case, the Court instructed the jury on three separate theories of § 1983 liability against the City: (1) a policy or custom of inaction; (2) inadequate investigation or discipline; and (3) inadequate training.  In their Motion for New Trial, Plaintiffs have argued the sufficiency

---

[10] *Barnes*, 201 F.3d at 821 (citing *Duncan v. Duncan,* 377 F.2d 49, 52 (6th Cir. 1967)) (quotation omitted).

[11] 42 U.S.C. § 1983.

[12] *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[13] *Smith v. Shelby Cnty.*, 721 F. Supp. 2d 712, 723 (W.D. Tenn. 2010); *Humes v. Gilless,* 154 F.Supp.2d 1353, 1357 (W.D. Tenn. 2001) (citing *Graham v. Connor,* 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989)).

of the evidence as to two of these theories, the City's custom of inaction and its custom of inadequate investigation or discipline. More particularly, Plaintiffs contend that the proof showed that the City's EIP and Inspectional Services complaint process were inadequate. The inadequacy of these programs was in turn the moving force behind the deprivation of Plaintiffs' civil rights.

A plaintiff may not prevail against a municipality under § 1983 based solely on the conduct of a municipal employee such as a police officer because "*respondeat superior* is not available as a theory of recovery under section 1983."[14] Instead a plaintiff must show that the municipality acted with deliberate indifference to the risk of a constitutional deprivation and that the municipality's deliberate indifference was the moving force behind the deprivation.[15] In other words, the plaintiff must demonstrate that the municipality "itself is the wrongdoer."[16] In making this showing, a § 1983 plaintiff must identify a municipal policy or custom that was the moving force behind the plaintiff's injury.[17] A municipal policy can be an "ordinance, regulation or decision officially promulgated by the [municipality's] officers."[18] Unlike an official policy, a custom is a practice that "has not received formal approval through. . . official decisionmaking

---

[14] *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

[15] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404-405, 411 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *City of Canton v. Harris,* 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

[16] *Vereecke*, 609 F.3d at 403 (citing *Doe v. Claiborne Cnty.,* 103 F.3d 495, 507 (6th Cir. 1996)).

[17] *Id*. (citing *Turner v. City of Taylor,* 412 F.3d 629, 639 (6th Cir. 2005)).

[18] *Monell*, 436 U.S. at 690, 98 S.Ct. 2018.

9

channels" but rather one "that policymaking officials knew about and acquiesced in."[19] A "custom" for purposes of municipal liability must "be so permanent and well settled as to constitute a custom or usage with the force of law."[20] Put another way, a "custom" is a "legal institution" not memorialized by written law.[21]

The Sixth Circuit has held that "the finding of a custom or policy is the initial determination to be made in any municipal liability claim."[22] For purposes of § 1983, a municipal custom or policy must be shown by "a clear and persistent pattern"[23] of misconduct of any kind and cannot be based on "one instance of potential misconduct."[24] The Supreme Court has required this higher standard in recognition of the fact that "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident."[25] Consistent with the deliberate indifference standard of fault, a plaintiff alleging municipal liability for the deprivation of some right must show "a history of widespread abuse

---

[19] *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell,* 436 U.S. at 690-91, 98 S.Ct. 2018).

[20] *Porter v. City of Columbus Div. of Police*, No. 09-4274, 395 F. App'x 197, 203-204, 2010 WL 3398887, at *5 (6th Cir. Aug. 30, 2010) (citing *Monell,* 436 U.S. at 691, 98 S.Ct. 2018).

[21] *Doe*, 103 F.3d at 508 (citing *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.), *cert. denied,* 510 U.S. 826, 114 S.Ct. 90, 126 L.Ed.2d 57 (1993)).

[22] *Id*. at 509.

[23] *Id*. at 508.

[24] *Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005).

[25] *City of Canton,* 489 U.S. at 392, 109 S.Ct. 1197.

that has been ignored by the City."[26] The Sixth Circuit has explained that to impose municipal liability on lesser proof "would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard," a result "forbidden by the Supreme Court."[27] In short, a § 1983 "plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference."[28]

Applying these principles to Plaintiffs' claims, the Court finds that Plaintiffs failed to adduce any evidence that the City's failures to act or investigate "were representative of a clear and persistent pattern" of deliberate indifference.[29] Plaintiffs put on expert proof that the City's EIP for police officers was inadequate to identify troubled MPD officers for meaningful intervention. In essence, Plaintiffs argued that the EIP was so ineffective at monitoring officers for warning behaviors that it amounted to a policy of inaction.[30] Likewise, Plaintiffs presented

---

[26] *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994) (citing *City of Canton v. Harris,* 489 U.S. 378, 397, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

[27] *Thomas*, 398 F.3d at 432-33 ("[W]ithout showing more than officer Abernathy's potentially excessive use of force in this particular case, Thomas cannot survive summary judgment.") (citing *Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *Brown,* 520 U.S. at 410, 117 S.Ct. 1382).

[28] *Id*. at 433.

[29] *Id*. (citing *Doe,* 103 F.3d at 508).

[30] Although the Sixth Circuit has not directly addressed a § 1983 claim based on a police department's early warning or intervention program, the Sixth Circuit has recognized § 1983 municipal-liability claims premised on an "inaction theory." *Powers*, 501 F.3d at 607. In such a case the plaintiff must prove (1) the existence of a clear and persistent pattern of violating federal rights; (2) notice or constructive notice on the part of the defendant; (3) the defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of inaction; and (4) that the defendants' custom was the "moving force," or direct causal link for the constitutional deprivation. *Id.* (citations omitted).

evidence that the City failed to investigate Plaintiffs' ISB complaints against Defendant Fetter. Plaintiffs, however, relied only on the "single instance" of their case "to infer a policy" of deliberate indifference. Plaintiffs never offered any proof of a "history of widespread abuse" or pattern of similar cases known to the City that would constitute a policy or custom for purposes of § 1983. Having failed to introduce evidence from which the jury could find a municipal policy or custom, Plaintiffs did not satisfy this essential element of their claims against the City.

It is true that Plaintiffs showed that they made several complaints to MPD about Defendants Fetter and Gagnier in the months prior to the May 2005 false arrest. There was proof that in January 2005 Plaintiffs had called 911 and contacted the precinct where Defendants Fetter and Gagnier were assigned to report that both officers had appeared at Plaintiffs' apartment complex. In February 2005, Plaintiff Fetter reported to ISB that her husband had fired his weapon into the ceiling of their marital home during an argument. In March 2005, both Plaintiffs went to ISB to make a formal complaint after MPD pulled them over on a narcotics tip. In a strict sense, Plaintiffs' did not just present a single instance of the City's failure to act or investigate but a series of events over a period of several months. Nevertheless, Plaintiffs' burden was to "reach beyond the facts of this case"[31] and show that the City engaged in a "deliberate pattern" of inaction or failure to investigate, in the face of similar complaints against other officers under similar circumstances.[32] Arguably Plaintiffs proved at most that the City

---

[31] *Thomas*, 398 F.3d at 434.

[32] *See Peet v. City of Detroit*, 502 F.3d 557, 568 (6th Cir. 2007) ("[N]o reasonable juror could infer such a custom or policy based on a mere three instances [of police misconduct] that are limited to one police investigation."); *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 (6th Cir. 2006) ("To establish deliberate indifference through these reports [of sexual abuse], Pendergrass would have had to allege and put on some evidence that two

was indifferent to their complaints; however, this is "analytically distinct[]" from "having a 'policy' of always being deliberately indifferent to unconstitutional actions."[33] Plaintiffs' failure to demonstrate a municipal policy or custom was fatal in this case. For this reason the Court holds that the jury's verdict in favor of the City was not against the weight of the evidence. Therefore, Plaintiffs' Motion is denied as to this assignment of error.

## II.     The Court's Evidentiary Ruling

Plaintiffs' next grounds for a new trial is the Court's ruling to exclude evidence of a citizen complaint made against Defendant Gagnier. During opening argument, counsel for the City told the jury that Plaintiffs had no proof of another instance in which a Memphis police officer planted evidence to justify a false arrest. Plaintiffs subsequently sought to introduce a citizen complaint of planted evidence and a false arrest made against Defendant Gagnier. Plaintiffs argued to the Court that Defendant had opened the door on the issue and that the evidence of the other complaint should be admitted. The Court excluded the evidence because the complaint against Gagnier was made to the FBI, and not to the City. There was no proof that the City had notice of the complaint until after Gagnier's false arrest of Plaintiffs in May 2005.

---

incidents of abuse over two years is an excessive number."); *Doe,* 103 F.3d at 508 (no municipal liability where school board knew that teacher may have sexually abused students in the past and failed to remove him without proof of failures to take action against other teachers engaging in similar conduct).

[33] *Doe*, 103 F.3d at 508. *See also Brown*, 520 U.S. at 411, 117 S.Ct. 1382 ("But this showing of an instance of inadequate screening is not enough to establish 'deliberate indifference.' In layman's terms, inadequate screening of an applicant's record may reflect 'indifference' to the applicant's background. For purposes of a legal inquiry into municipal liability under § 1983, however, that is not the *relevant* 'indifference.' A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.") (emphasis in original).

The Court reasoned that the evidence was not relevant to show the City's custom or policy for purposes of § 1983.

Evidentiary rulings fall within the broad discretion of the trial court.[34] A new trial is proper only when an abuse of discretion on an evidentiary ruling has an effect on the final result.[35] "Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial."[36] The Court finds that it was not an abuse of discretion to exclude the evidence of the additional complaint against Gagnier. Plaintiffs conceded that the City did not have notice of the allegation against Gagnier because the complaint was not made to MPD. As a result, the complaint could not go to show the City's deliberate indifference to a risk of this kind of police misconduct. Furthermore, proof of a second episode of planting evidence would not give rise to an inference of a "history of widespread abuse" in the MPD. As previously discussed, Plaintiffs never established a municipal policy or custom. Therefore, the exclusion of this evidence did not change the outcome of the trial. Plaintiffs' Motion is denied as to this issue.

## III. Comments of Counsel for Defendant

Plaintiffs' final argument for a new trial concerns certain statements about the law made by opposing counsel during opening and closing argument. According to Plaintiffs, counsel

---

[34] *Conklin v. Lovely,* 834 F.2d 543, 551 (6th Cir. 1987).

[35] *Leonard v. Uniroyal, Inc.,* 765 F.2d 560, 567 (6th Cir. 1985). *See also Hillside Prods., Inc. v. Cnty. of Macomb*, Nos. 08-2268, 08-2232, 389 F. App'x 449, 458, 2010 WL 2545592, at *8 (6th Cir. June 15, 2010).

[36] *Nolan v. Memphis City Sch.*, 589 F.3d 257, 264-65 (6th Cir. 2009) (quoting *Morales v. Am. Honda Motor Co.,* 151 F.3d 500, 514 (6th Cir. 1998)).

misrepresented the correct legal standard for § 1983 claims by asserting that Plaintiffs had to prove a custom or practice of planting illegal drugs. It is well-settled that when a new trial is requested on the basis of counsel's conduct, there must be clear prejudice that would justify a new trial.[37] "[C]ounsel should not introduce extraneous matters before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects."[38] Should the Court find "a reasonable probability" that counsel's conduct has influenced the jury verdict, it is proper to set the verdict aside.[39] The Court finds that there is no reasonable probability that counsel for Defendant's remarks to the jury influenced the verdict in this case. Moreover, Plaintiffs did not object at the time of the remarks, and the Court instructed the jury to disregard statements of counsel and follow the law as the Court explained it in its instructions. Where a party does not present a timely objection to the alleged misconduct and the Court has instructed the jury not to consider the arguments of counsel, it is not error to deny a motion for new trial.[40] Therefore, Plaintiffs' Motion is denied as to this issue.

## CONCLUSION

Having concluded that Plaintiffs have not shown that they are entitled to a new trial, Plaintiffs' Motion for New Trial is **DENIED**.

---

[37] *See United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

[38] *Farley v. Country Coach Inc.*, No. 08-1591, 2010 WL 5128717, at *8 (6th Cir. Dec. 15, 2010) (quoting *City of Cleveland v. Peter Kiewit Sons' Co.,* 624 F.2d 749, 756 (6th Cir. 1980) (other citations omitted)).

[39] *Id*.

[40] *Id*. at *9.

**IT IS SO ORDERED.**

            **s/ S. Thomas Anderson**
            S. THOMAS ANDERSON
            UNITED STATES DISTRICT JUDGE

            Date: April 13, 2011.